IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EXHIBIT WORKS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 5090 |
| | ) | |
| INSPIRED EXHIBITS, INC., ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On September 2, 2005, plaintiff Exhibit Works, Inc. ("Exhibit Works"), invoking this court's diversity jurisdiction, filed a five-count complaint against defendants Inspired Exhibits, Inc. ("Inspired Exhibits"), Stephen Kelke, ("Kelke"), Robin White ("White"), Lindsay Millsap ("Millsap"), and Robert Herdman ("Herdman") (collectively "defendants"), alleging breach of fiduciary duty, violation of the Illinois Trade Secret Act, intentional interference with business relations and prospective economic advantage, breach of contract and civil conspiracy in breach of fiduciary duties. (Dkt. No. 1). On September 2, 2005, Exhibit Works also filed the pending motion for a preliminary injunction. (Dkt. No. 10). Expedited discovery proceeded and opposing counsel worked professionally and cooperatively to present the matter efficiently to the court. Oral argument on Exhibit Works' motion was held on December 1, 2005. For the reasons set forth below, Exhibit Works' motion for preliminary injunction is denied.

BACKGROUND

Exhibit Works engages in the trade show exhibit and event marketing business. (Dkt. No. 1 at ¶ 3). Exhibit Works' primary office is in Livonia, Michigan but it opened a satellite office in Lisle, Illinois in 2002. (Dkt. No. 10 at ¶ 5). Exhibit Works opened its Illinois office to expand Exhibit Works' trade show business in Illinois and service its account with International Truck and Engine Corporation ("International"). (*Id.*) Defendants Kelke, White, Millsap and Herdman worked in Exhibit Works' Illinois office. Kelke was the general manager of the office, (*Id.* at ¶ 6), White was an account manager, (*Id.* at ¶ 7), Millisap was an account coordinator, (*Id.* at ¶ 8), and Herdman was the creative designer (*Id.* at ¶ 8).

The defendants contend that during the first part of 2005, Exhibit Works engaged in corporate restructuring which resulted in a series of missteps that made Exhibit Works less attractive to clients such as International. (Dkt. No. 18 at pg 2-3). Kelke, White and Herdman concluded that they would likely lose their jobs if International pulled its business from Exhibit Works since the Illinois office's primary focus was serving International. (*Id.* at pg 3). The defendants assert that they decided during 2005 to "create a new company shell, provide two weeks' notice [to Exhibit Works], aid in the orderly turnover of accounts and information within [Exhibit Works], leave [Exhibit Works], and commence operations as a new company with the hope that trade show exhibitors would consider them qualified and provide business." (*Id.*)

The defendants state that they had hoped to start their new business, Inspired Exhibits, over the 2005 Labor Day weekend. However, on the evening of August 17, 2005 via an email sent by an International employee, Exhibit Works became aware of defendants' plan to create Inspired Exhibits. (Dkt. No. 10 at ¶ 12-15). The next day, August 18th, Exhibit Works fired

Kelke, White, Millsap and Herdman. (*Id.* at ¶ 16). International also notified Exhibit Works on August 18th that it was terminating its relationship with Exhibit Works. (*Id.* at ¶ 18).

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy that is only granted where there is a clear showing of need." *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). This court's decision on whether to issue a preliminary injunction is reviewed by the Seventh Circuit under an abuse of discretion standard. *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 703 (7th Cir. 2005) (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). "As a threshold matter, [Exhibit Works] must show (1) a likelihood of success on the merits, (2) irreparable harm if the preliminary injunction is denied, and (3) the inadequacy of any remedy at law." *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Once the three primary factors are considered, this court must balance the (4) the harm to parties if the preliminary injunction is wrongfully decided ("the private interests"), and (5) the impact on the persons not directly concerned in the dispute ("the public interests"). *Id.*

## ANALYSIS

As stated above, to obtain the preliminary injunctive relief that Exhibit Works seeks, the threshold requirement that it has the burden of establishing is a reasonable likelihood of success on the merits. To establish that, Exhibit Works must show that the defendants breached their fiduciary duties to Exhibit Works or misappropriated Exhibit Works' confidential trade secrets. The court will address each of these requirements.

I. Fiduciary Duties

Exhibit Works argues that the defendants violated their fiduciary duties to Exhibit Works by: (1) recruiting Exhibit Works employees, (2) encouraging International to move its business from Exhibit Works to Inspired Exhibits, (3) taking customer property from Exhibit Works' warehouse for Inspired Exhibits' benefit while the defendants were employed with Exhibit Works, (4) breaching Exhibit Works' conflict of interest policy, and (5) actively misleading Exhibit Works about their plans to create Inspired Exhibits. Exhibit Works also seeks to enjoin Inspired Exhibits, along with the individual defendants, because Exhibit Works alleges that the bad actions were taken by Inspired Exhibits' principles on the defendant company's behalf.

Under Illinois law,[1] "an employee owes a duty of fidelity and loyalty to his employer." *V.I.M. Recyclers, L.P. v. Magner*, No. 03 C 343, 2005 WL 1745657, at *12 (N.D. Ill. July 21, 2005) (citing *ABC Trans. Nat'l Transp., Inc. v. Aeronautics Forwarders, Inc.*, 379 N.E.2d 1228, 1237 (Ill. App. Ct. 1978)). "An employee need not be an officer or a director to be accountable [for a breach of fiduciary duties] since an agent must act solely for the principle in all matters related to the agency and refrain from competing with the principle." *E.J. McKernan Co. v. Gregory*, 623 N.E.2d 981, 994 (Ill. App. Ct. 1993) (citing *Radiac Abrasives, Inc. v. Diamond Tech., Inc.*, 532 N.E.2d 428, 433 (Ill. App. Ct. 1988)).

However, "[i]t is recognized that an employee, absent a restrictive contractual provision, has a right to enter into competition with the former employer upon leaving such employ." *Classic Amenities, Inc. v. Verbeke*, No. 00 C 3326, 2003 WL 21801021, at *2 (N.D. Ill. Aug. 1,

---

[1] Neither party has raised any choice of law issue, however, both sides have cited to Illinois law as controlling law in this matter. Consequently, based upon the implicit position of the parties, this court will look to Illinois law to resolve the issues before it.

2003) (quoting *Lawter Int'l, Inc. v. Carroll*, 451 N.E.2d 1338, 1349 (Ill. App. Ct. 1983) (emphasis deleted)). "In Illinois, the timing of arguably competitive behavior is ... important. The 'preliminary stages' doctrine permits an employee to plan, form, and outfit a competing corporation while still working for the employer, as long as he does not commence competition," *Riad v. 520 S. Michigan Ave. Assoc. Ltd.*, No. 97 C 2488, 2000 WL 680217, at *3 (N.D. Ill. May 22, 2000) (citing *Voss Eng'g v. Voss Indus, Inc.*, 481 N.E.2d 63, 66 (Ill. App. Ct. 1985)), but "an employee is held accountable for breaching his fiduciary duty to his employer when he goes beyond such preliminary competitive activities and commences business as a rival concern while still employed." *E.J. McKernan Co. v. Gregory*, 623 N.E.2d 981, 994 (Ill. App. Ct. 1993) (citing *Radiac Abrasives, Inc. v. Diamond Tech., Inc.*, 532 N.E.2d 428, 433 (Ill. App. Ct. 1988)).

"Corporate officers, however, stand on a different footing [than employees because] they owe a fiduciary duty of loyalty to their corporate employer not to (1) actively exploit their positions within the corporation for their own personal benefit, or (2) hinder the ability of a corporation to continue the business for which it was developed." *Veco Corp. v. Babcock*, 611 N.E.2d 1054, 1059 (Ill. App. Ct. 1993) (citing *Smith-Shrader Co. v. Smith*, 483 N.E.2d 283 (Ill. App. Ct. 1985); *Graham v. Mimms*, 444 N.E.2d 549 (Ill. App. Ct. 1982)). "The resignation of an officer will not sever liability for transactions completed after termination of the officer's association with the corporation for transactions which (1) began during the existence of the relationship or (2) were founded on information acquired during the relationship." *Dowell v. Bitner*, 652 N.E.2d 1372, 1380 (Ill. App. Ct. 1995).

Exhibit Works argues that Kelke, White and Herdman, although lacking an official corporate title, still owed fiduciary duties to Exhibit Works commensurate with that of corporate

5

officers because they held management responsibilities in Exhibit Works' Illinois office. A person may owe fiduciary duties equal to those owed by a corporate officer even when that individual does not possess a corporate title. *See FoodComm Intern. v. Berry*, 328 F.3d 300, 304 (7th Cir. 2003) (citing *Radiac Abrasives, Inc. v. Diamond Tech., Inc.*, 532 N.E.2d 428, 434 (Ill. App. Ct. 1988); *Mullaney, Wells & Co. v. Savage*, 402 N.E.2d 574, 580 (Ill. App. Ct. 1980)). A "defacto" corporate officer status can be created if the individual was: (1) substantially intertwined with the business' operations, (2) held himself out as a corporate officer, or (3) has previously exercised corporate powers. *See FoodComm Intern.*, 328 F.3d at 304 (citing Illinois law); *Lincoln Nat'l Life Ins. Co. v. Nicklau, Inc.*, No. 98 C 2453, 2000 WL 656683, at *4-5 (May 17, 2000) (citing Illinois law); *Dugan v. Smerwick Sewerage Co.*, No. 95 C 3223, 1996 WL 535306, at *7 (N.D. Ill. Sept. 18, 1996) (citing Illinois law); *Gonnella Baking Co. v. Clara's Pasta di Casa, Ltd.*, 786 N.E.2d 1058, 1062 (Ill. App. Ct. 2003); *H&H Press, Inc. v. Axelrod*, 638 N.E.2d 333, 339 (Ill. App. Ct. 1994).

After reviewing the evidence and considering the arguments of counsel, the court finds that the individual defendants were not "defacto" corporate officers of Exhibit Works and did not owe Exhibit Works fiduciary duties in excess of the fiduciary duties owed by any employee to an employer. The Exhibit Works organizational chart shows that the Illinois office is one of ten different departments reporting to Jeff Byrne, Corporate Vice President. (JX 10).[2] Kelke did hold the title of "General Manager" of the Illinois office. However, Kelke's management responsibilities encompassed only the Illinois office and the service of the Illinois office's

---

[2] References to "JX" are to the Joint Trial Exhibits submitted to the court by the parties on November 22, 2005.

clients, which was primarily International. Moreover, none of the other individual defendants were substantially intertwined with Exhibit Works' business. Their work was limited to the activities of the Illinois office. (See Exhibit Works' job descriptions for the individual defendants at JX 38-40, 58). None of the individual defendants held themselves out as corporate officers, they did not take any steps to provide themselves any indicia of Exhibit Works' corporate authority, and they did not exercise any of Exhibit Works' corporate authority while employed with Exhibit Works. The individual defendants were middle level managers with Exhibit Works. They were neither defacto nor *dejure* corporate officers.

Under the law, the court must also consider whether Exhibit Works and the individual defendants entered into restrictive contractual agreements that expanded the individual defendants' obligations not to compete with Exhibit Works beyond their fiduciary duties as employees. Exhibit Works submitted to the court copies of documents entitled "Personnel Policies Acknowledgment," "Exhibit Works, Inc. Employee Confidentiality Agreement," "Exhibit Works, Inc. Employee Agreement Conflict of Interest," and "Exhibit Works Employee Handbook." (JX 41-53).[3]

---

[3] The Personnel Policies Acknowledgment form contains a preprinted date of May 30, 2001. Under Exhibit Works' procedures an employee signs the form to acknowledge that the employee "has received and read the Exhibit Works Inc. personnel policies" and the employee adds the date of their signature. (JX. 41). The form specifically notes in both bold and all caps that "these policies are a guide and not an employee contract." (*Id.*) (emphasis excluded). Exhibit Works also reserves the right to change the personal policies at any time. Exhibit Works submitted signed copies of the personnel policies acknowledgment form for defendants Kelke, (JX 41), Herdman, (JX 44), and White, (JX 47) but did not submit a form signed by Millsap.

Exhibit Works also provided its Employee Handbook as a joint exhibit. (JX 53). This handbook is dated January 15, 2002 and supercedes all other editions. (*Id*. at pg 1). The court concludes that this is the current copy of Exhibit Works' employee policies and is the document referenced by the Personnel Policies Acknowledgment form. The handbook states that Exhibit

None of the documents submitted by Exhibit Works contains a clause prohibiting future competition by former Exhibit Works employees. The non-disclosure language in the employee handbook and the employment confidentiality agreement cannot be read to prohibit future competition since it only regulates the disclosure of confidential Exhibit Works' information. The court holds that these documents did not create a non-competition agreement between Exhibit Works and any of the individual defendants.

The conflict of interest agreement is closer to being applicable to the defendants in that it prohibits an employee from having "interests in outside businesses which conflict or appear to conflict with their ability to act and make independent decisions in the best interest of Exhibit Works." (Ex. 43, 46, 49). However, Illinois law disfavors restrictive covenants between an employer and employee. *Trailer Leasing Co. v. Assocs. Commercial Corp.*, No. 96 C 2305, 1996 WL 392135, at *1 (N.D. Ill. July 10, 1996) (citing *Jefco Labs, Inc. v. Carroo*, 483 N.E.2d

---

(cont...) Works employees are "employees at will." (*Id.* at pg. 2). The handbook does not contain a restrictive covenant, any covenant not to compete, or any prohibition on future employment.

The closest restrictions contained in the handbook are the sections entitled "Conflict of Interest" and "Non-Disclosure." The conflict of interest section states that employees are prohibited from having relationships with outside businesses "for the gain of purchases at Exhibit Works, Inc." (*Id.* at 21). The non-disclosure section prohibits the disclosure of confidential business information and trade secrets and requires the employee to return all Exhibit Works related materials at the end of the employee's employment. (*Id.*)

Augmenting the Employee Handbook are the Employee Confidentiality Agreement and Conflict of Interest statement. Exhibit Works has provided signed copies of the confidential agreement for defendants Kelke, (JX 42, 50), Millsap, (JX 45, 52), and White, (JX 48, 52) but has not provided a form signed by Herdman. Exhibit Works also submitted signed copies of the conflict of interest form defendants Kelke, (JX 43), Millsap, (JX 46), and White, (JX 49) but did not submit a form signed by Herdman. Kelke's confidentiality agreement and conflict of interest forms are dated November 5, 2004, (JX 42, 43, 50), Millsap's forms are dated November 4, 2004 (JX 45, 46, 52) and White's are dated October 11, 2004. (JX 48, 49, 52).

999, 1001 (Ill. App. Ct. 1985)). "Covenants are a restraint on trade [and] courts must strictly construe them to ensure that their intended effect is not to prevent competition *per se*." *Hanchett Paper Co. v. Melchiorre*, 792 N.E.2d 395, 400 (Ill. App. Ct. 2003) (citing *Office Mates 5, North Shore, Inc. v. Hazen*, 599 N.E.2d 1072 (Ill. App. Ct. 1992)). This court narrowly construes, as it must, the Exhibit Works' conflict of interest agreement and finds that the agreement does not serve as a covenant not to compete that limits the individual defendants' actions after the termination of their employment with Exhibit Works. Because none of the individual defendants, by virtue of their positions with Exhibit Works, or by virtue of their contractual agreement with Exhibit Works, had fiduciary duties beyond that of ordinary employees, the court turns to the issue of whether the individual defendants breached any of their fiduciary duties as Exhibit Works' employees.

After examining the evidence and the arguments of counsel, the court finds that no breach occurred even though the individual defendants created defendant Inspired Exhibits prior to their termination of employment with Exhibit Works. The "'preliminary stages' doctrine permits an employee to plan, form, and outfit a competing corporation while still working for the employer, as long as he does not commence competition." *Riad v. 520 S. Michigan Ave. Assoc. Ltd.*, No. 97 C 2488, 2000 WL 680217, at *3 (N.D. Ill. May 22, 2000) (citing *Voss Eng'g v. Voss Indus, Inc.*, 481 N.E.2d 63, 66 (Ill. App. Ct. 1985)). The corporate formation of Inspired Exhibits, the obtaining of telephone numbers and e-mail addresses for the business, and other initial preparatory steps were lawful activities by the individual defendants.

Exhibit Works argues that the defendants engaged in competition while they were still employees instead of taking mere preparatory steps. Exhibit Works argues that Kelke solicited

9

Exhibit Works' customers for Inspired Exhibits while Kelke was still an employee of Exhibit Works. The record, however, reflects that Kelke never actively solicited Exhibit Works customers. Kelke discussed his concerns about the management reorganizations with Linda McGovern at International, (McGovern Oct. 24, 2005 Dep. at pg. 32), but the court finds that this was part of a casual conversation, not a business solicitation. McGovern testified that Kelke stated in the conversation with her that he would not start his business until he had given his proper notice to Exhibit Works. (*Id.* at pg. 30). McGovern also testified that it was her idea to send out the August 17th email before she left International. (*Id*. at pg. 31). There is no evidence in the record to demonstrate any active solicitation of International by Kelke or any of the other defendants. The court does recognize that the International notified Exhibit Works that it would be ending its business relationship on August 18th, the same day the individual defendants were fired by Exhibit Works. The business decision by International is not proof of breach by the individual defendants absent a solicitation of International for Inspired Exhibits by the individual defendants while they were still employed by Exhibit Works.

Kelke's alleged solicitation of a second Exhibit Works client, CT Corporation, also fits into the same category of mere discussions without solicitation. Kelke mentioned that Exhibit Works was going through a transformation but there is no evidence in the record to show that Kelke solicited CT Corporation to be a client of Inspired Exhibits while Kelke was employed at Exhibit Works.

Exhibit Works' counsel makes several additional arguments to try to demonstrate a breach of fiduciary duties. Exhibit Works argues that Kelke lied to Exhibit Works' president Dominic Silvio after Silvio had asked Kelke whether he had any plans to leave Exhibit Works.

10

Kelke, however, was under no obligation to inform Silvio of his desire to leave and his preparatory steps in creating a new business. An employer can effectively stymie an employee's right to take the initial preparatory steps to create a business, which the employee is lawfully allowed to do while still employed, if the employer were to continually inquire about the employee's plans for the future. Kelke's future plans were his to keep to himself. Exhibit Works had no right under Illinois law to know them.

Exhibit Works also argues that the individual defendants breached their fiduciary duties because they did not properly perform the level of work required of them while they were still employed with Exhibit Works. The court, however, finds that the defendants were properly attempting to complete their work at Exhibit Works and then transition to Inspired Exhibits after giving proper notice. The defendants were forced to leave Exhibit Works before the date they had planned to leave because Exhibit Works fired them. If any disruption occurred in the transition, it was due to Exhibit Works' desire to immediately terminate these employees. Even assuming that the defendants did fail to perform all of their work before leaving, or some of the benefit of their work seeped to Inspired Exhibits, this alleged harm, if proven, can be easily remedied through monetary damages.

II. Confidential Information and Trade Secrets

Exhibit Works also claims that it is entitled to an injunction to prevent the defendants from using Exhibit Works' confidential information and trade secrets that the defendants' acquired during the course of their employment with Exhibit Works. Exhibit Works alleges that the individual defendants downloaded information related to Exhibit Works and its customers from their Exhibit Works computers onto CDs just days before they left Exhibit Works. White

11

allegedly "downloaded all of her 2003, 2004 and 2005 Outlook email file folders relating to International as well as other documents relating to International," (Dkt. No. 32, Ex. 1 at pg. 13), and Herdman and Millsap also took some of the information contained on their Exhibit Works computers. (*Id.* at pg. 14). Exhibit Works also alleges that Kelke took information about Exhibit Works' invoicing policies, storage rates, inventory labor rates, and design charges. (*Id.*)

"The Illinois Trade Secret Act ("ITSA")[4], allows the court to issue an injunction in the case of 'actual or threatened misappropriation of a trade secret.'" *Computer Assoc. Intern. v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 695 (N.D. Ill. 2004) (citing 765 ILCS 1065/3(a); *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1267 (7th Cir. 1995)). "To prevail on a claim for misappropriation of a trade secret under the [ITSA], the plaintiff must demonstrate that the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business." *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003) (citations omitted).

The ITSA defines a trade secret as:

Information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d). Illinois courts summarize the definition of a trade secret under the ITSA as

---

[4] "ITSA is the exclusive remedy under Illinois law for misappropriation of trade secrets." *AutoMed Tech., Inc. v. Eller*, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001) (citing 765 ILCS 1065/8(a)); *see also Hecny Transp., Inc. v. Chu*, – F.3d –, Nos. 05-1273, 05-1399, 2005 WL 2842081, at *1 (7th Cir. Oct. 31, 2005); *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995) (citing Illinois law).

follows: the plaintiff must show (1) "the information was sufficiently secret to give them a competitive advantage," and (2) "they took affirmative measures to prevent others from acquiring or using the information." *Liebert Corp. v. Mazur*, 827 N.E.2d 909, 922 (Ill. App. Ct. 2005) (citing 765 ILCS 1065/2(d); *Gillis Associated Indus., Inc. v. CariAll, Inc.*, 564 N.E.2d 881, 885 (Ill. App. Ct. 1990)).

Illinois courts have identified the following factors to analyze whether allegedly protected information is actually a trade secret:

> (1) the extent to which the information is known outside of the plaintiff's business; (2) the extent to which it is known by the employees and other involved in the plaintiff's business; (3) the extent of measures taken by the plaintiff to guard the secrecy of the information; (4) the value of the information to the plaintiff and to the plaintiff's competitors; (5) the amount of effort or money expended by the plaintiff in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Hay Group, Inc. v. Bassick*, No. 02 C 8194, 2005 WL 2420415, at *7-8 (N.D. Ill. Sept. 29, 2005) (citing *ILG Indus., Inc. v. Scott*, 273 N.E. 393 (Ill. 1971); *Strata Mktg. v. Murphy*, 740 N.E.2d 1166, 1176 (Ill. App. Ct. 2000)).

Exhibit Works has not demonstrated that the information allegedly taken by the defendants were trade secrets as defined by the ITSA. Exhibit Works argues that the individual defendants took a large amount of Exhibit Works' corporate information. However, much of that information does not qualify as trade secret information under Illinois law because the fact that it is available to or known by many people who had no obligations to keep it secret such as Exhibit Works' customers.

Exhibit Works cites to the Seventh Circuit's decision in *PepsiCo, Inc v. Redmond* to support its argument that the defendants took trade secrets when they left Exhibit Works. 54 F.3d 1262, 1265-66 (7th Cir. 1995). In that case, PepsiCo had sought an injunction to prevent

one of its former employees from using information he had learned at PepsiCo with this new employer, Quaker. In upholding the district court's injunction, the Seventh Circuit held that "it is not the 'general skills and knowledge acquired during [defendant's] tenure with' PepsiCo that PepsiCo seeks to keep from falling into Quaker's hands, but rather 'the particularized plans or processes developed by PepsiCo and disclosed to the [defendant] while the employer-employee relationship existed, which are unknown to others in the industry and which give the employer an advantage over his competitors." *Id.* (citing *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1202 (7th Cir. 1987)). Exhibit Works has not presented any evidence that the defendants obtained "particular plans or processes" or other secret information that was not known to others in the industry and provides an economic advantage to Exhibit Works over its competitors. *Id.*

Additionally, Exhibit Works has not presented evidence that it took any reasonable steps to secure and protect the information allegedly taken by the defendants. Exhibit Works argues that it protected its information through the confidentiality agreement and computer passwords. Trade secrets are a subset of a company's overall information. To qualify for trade secret protection, the information must be guarded in a manner that is reasonable under the circumstances because of its value through its not being known generally. The fact that Exhibit Works has failed to demonstrate that it took reasonable steps beyond those taken for all of its business information, even that publicly available, to protect what it now claims to be trade secret information in the Illinois office further discredits its argument that the information was trade secrets information that should be protected under the ITSA.

Exhibit Works also argues that all information allegedly taken by the individual defendants are covered by the confidentiality agreement. However, Exhibit Works has failed to

14

establish that this information was "confidential" information covered under the terms of the agreement. Exhibit Works has not established, as it has the burden to do, what exactly was taken by the defendants which leaves the court to question whether the information taken by the defendants was confidential trade secret information sufficient to support the injunctive relief Exhibit Works seeks.

## CONCLUSION

For the reasons set forth above, Exhibit Work's motion for preliminary injunction of September 2, 2005 (Dkt. No. 10), is denied. The parties are encouraged to discuss settlement. Counsel should confer pursuant to Rule 26(f) and file a joint Form 35 signed by counsel for each party by January 13, 2006. This case is set for a report on status at 9:00am on January 19, 2006 for the entry of a scheduling order.

ENTER:

_____
JAMES F. HOLDERMAN
United States District Judge

Date: December 21, 2005